Matthias, J.
 

 The contention made by the plaintiff in error may be concisely stated as follows :
 

 (1) “The distribution of gas to the city of Sandusky and its inhabitants was a joint enterprise undertaken by two utilities, and the gross receipts of the enterprise should be apportioned between the utilities engaged in the joint venture.”
 

 (2) “Even if the Sandusky Company reported a part only of its gross receipts in each year, it nevertheless made a statement of the remainder, and the tax commission was without authority to reopen its findings.”
 

 (3) “Conceding this to be an excise tax measured by the business done, and not a property tax, it nevertheless amounts to a species of double tax
 
 *485
 
 ation contrary to the legislative intent where the tax commission includes the same funds in determining, for the purpose of the tax, the gross receipts of two public utilities.”
 

 (4) “The action of the tax commission and the judgments of the lower courts are violative of the Fourteenth Amendment of the Constitution of the United States, of Section 16 of Article I, and Section 2 of Article I, of the Constitution of the State of Ohio.”
 

 The levy of an excise tax upon the gross- receipts of public utility companies is made pursuant to the provisions of Sections 5417, 5474, 5475 and 5483, General Code, and the words “entire gross receipts,” as there employed, mean and include the entire receipts of such company from the intrastate business done by it under the exercise of its corporate powers, whether from the operation of the utility itself or from any other business done by it.
 

 The question whether the relationship of the Sandusky Company and the Logan Company, subsequent to June 7, 1919, was a joint enterprise undertaken by the two utilities, the gross receipts of which should be apportioned between the two companies as being engaged in a joint venture, must be determined from a consideration of the facts disclosed by the contract covering the period in question, which was attached to and made a part of the amended answer. In examining those facts it is quite pertinent to consider first the relationship of the two companies by virtue of the previous contracts between them and to observe what change, if any, was made in that relationship when
 
 *486
 
 they came to execute the contract covering the period of time involved in this controversy.
 

 Unquestionably, under the first contract between the companies the enterprise was a joint undertaking, for by virtue of the provisions of that contract there was no purchase or sale of the gas by one company to the other; on the contrary the Logan Company produced and furnished the gas under an arrangement whereby the Sandusky Company was to and. did distribute the same to the inhabitants of the city of Sandusky at rates fixed and prescribed by that contract; losses from bad debts were to be shared by the companies; line losses were to be borne jointly; and the receipts were to be divided between the two companies upon a percentage basis therein stipulated.
 

 The contract entered into on June 7, 1919, which controls the situation here presented, is vastly different. It is a clear contract for the purchase and sale of gas to the Sandusky Company by the Logan Company, the point of delivery by the Logan Company to the Sandusky Company being at the city limits' of the city of Sandusky, where the Logan Company maintained a measuring station. It was expressly stipulated that delivery should be there made, and that all expense, risk, and danger thereafter were assumed and borne exclusively and wholly by the Sandusky Company. There was no agreement by the Sandusky Company to account to the Logan Company for the proceeds of sales of gas made by it upon a percentage basis or otherwise. On the contrary, it was agreed that the San-dusky Company should pay the Logan Company 40 cents for each and every thousand cubic feet of
 
 *487
 
 gas delivered to it, for which statements were to be rendered by the Logan Company on the 10th of each month, and the Sandusky Company was required to pay the Logan Company at its office in the city of Columbus for all gas delivered during the preceding month at a price stipulated.
 

 These facts clearly show the contract to be one for the purchase and sale of gas, and absolutely refute and repel the theory of joint enterprise or joint undertaking. The only liability created is that of the Sandusky Company to pay the Logan Company for the gas delivered to it at the measuring station, and, under the terms of the contract, that liability is absolute and unconditional. The transaction was no more a joint enterprise or joint undertaking than that involved in the sale by a wholesale to a retail grocer.
 

 The case of
 
 State
 
 v.
 
 Coshocton Gas Co.,
 
 22 O. D. N. P., 412, affirmed without opinion in 88 Ohio St., 608, 106 N. E., 1078, relied upon by counsel for plaintiff in error, instead of being an authority in support of its contention, is, in its reasoning, and because of the clear distinction in the facts involved, an authority for the defendant in' error. The clear distinction between the two cases, as stated in the language of the court in the decision of the
 
 Coshocton case,
 
 is that “the Buckeye Company did not sell and the defendant did not buy the gas.” The facts upon which that decision was based were that there was a mutual agreement between the two gas companies wherein one company produced the gas and delivered it into the pipe lines of the other, and the latter disposed of it to its local consumers, making collection therefor and
 
 *488
 
 dividing the proceeds with the producing company upon a percentage basis stipulated in the contract. It was upon these facts that such relationship was held to be a common or joint enterprise for the sale of gas to private consumers, and to share the receipts thereof, rather than a sale of property from one company to the other. As therein suggested by the court, the Buckeye Company had the general ownership in the gas at all times, but by special agreement furnished and delivered it to the Coshocton Company for distribution and collection of the amount due at the stipulated rates and thereupon to account to the Buckeye Company for its proportion of the gross receipts. The situation of the parties in that case is clearly stated in the following language:
 

 “On disposition of the product by defendant, and receipt of the proceeds, the relation of debtor and creditor did not arise; rather, defendant’s relation to the fund was that of trustee to its principal, unless the latter saw fit to waive-that relation.
 
 * * *
 
 Neither, at any time, was entitled to the whole fund as a right of property, but each was entitled to a proportionate share as belonging to it. * * * I am clearly of the opinion that the contract between the two companies did not contemplate a sale of the gas to the defendant.”
 

 It was under such state of facts that the court found that the portion of the gross receipts from such transaction which actually belonged to the Coshocton Company was all upon which an excise tax could be levied as against that company, and that the same could not be levied against it upon receipts in its hands to which it had no property
 
 *489
 
 right, but which were merely passing through its hands to the company in fact owning the gas, and to which such proceeds therefrom belonged. We adhere to the rule adopted and applied by the court upon the facts found in the
 
 Coshocton
 
 case, but it has no application here except as an argument in favor of the action taken by the tax commission.
 

 The provision of Section 5474, General Code, that the statement to be filed shall include “the company’s proportion of gross receipts for business done by it within this state in connection with other companies,” etc., obviously can have no application to a situation such as presented here, where there is no apportionment of gross receipts between two companies engaged in a joint- undertaking or enterprise.
 

 The contention that the tax commission was without authority to reopen its finding is based upon the averment that the Sandusky Company duly filed the annual statements required of it, wherein the total amount of its gross receipts appeared, and, further, that examiners of the tax commission examined the books, records, and papers of the San-dusky Company, and that the finding of the commission with reference to the taxable gross receipts of the defendant company was based upon such statements of the company and the report of the commission’s representative or examiner.
 

 It is quite apparent that the finding of the commission, as reported to the state auditor in each of the four years in question, was based upon the assumption that the relationship between the San-dusky Company and the Logan Company had continued as it had been under the preceding contract.
 
 *490
 
 The burden was upon the company to make full disclosures, and it does not appear that either the tax commission or its representatives or examiners, at the time its former findings were made, had any knowledge of the true relationship between the Sandusky Company and the Logan Company. Under these circumstances the tax commission was fully authorized by the provisions of Section 5461, General Code, to correct its findings and make the same in accordance with the facts, and, as thus corrected, to certify to the state auditor for collection the portion of the excise tax theretofore assessed against and unpaid by the defendant company.
 

 The fact that from a situation such as presented a species of double taxation results does not render the statute invalid or the order of the tax commission violative of any provision of either the federal or the_state Constitution. It follows that the judgment of the Court of Appeals should be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Day, Allen, Kinkade and Robinson, JJ., concur.