## Wright v. State
*[Cite as 7 AOA 471]*

*Case No. 90AP-149*
*Franklin County, (10th)*
*Decided October 11, 1990*

*Mark A. Serrott, Thomas M. Tyack & Associates Co., L.P.A., for Appellee.*

*Anthony J. Celebrezze, Jr., Attorney General, Simon B. Karas, and M. Celeste Cook, for appellant.*

McCORMAC, J.,

Defendant-appellant, state of Ohio, appeals the judgment of the Franklin County Court of Common Pleas finding that plaintiff-appellee, Tracy Wright, was a wrongfully imprisoned individual as defined in R.C. 2743.48 and raises the following assignments of error:

"I. THE COURT ERRED IN INTERPRETING OHIO'S WRONGFUL IMPRISONMENT STATUTE TO APPLY TO JUVENILES.

"II. THE COURT ERRED IN FINDING A VIOLATION OF THE EQUAL PROTECTION OF THE LAWS.

"III. THE COURT ERRED IN CONSIDERING THE LEGISLATIVE TESTIMONY OF STEPHEN SAMUELS.

## "IV. THE COURT ERRED IN CONSTRUING THE STATE'S MOTION AS BEING A MOTION TO DISMISS.

## "V. THE COURT ERRED BY NOT STRICTLY CONSTRUING OHIO'S WRONGFUL IMPRISONMENT STATUTE."

Appellee was arrested on June 19, 1984, and charged with delinquency for having committed an act, involuntary manslaughter, which would be a crime if committed by an adult. Appellee was initially tried and adjudged a delinquent on July 30, and August 1, 1985. Subsequently, a new trial was granted and appellee was again adjudged a delinquent. The trial court committed appellee to the Department of Youth Services for institutionalization in a maximum security facility for a minimum period of one year and a maximum period not to exceed his twenty-first birthday.

Upon appeal this court reversed the decision of the common pleas court, juvenile branch, as against the manifest weight of the evidence. See *In the Matter of Tracy L. Wright* (July 2, 1985), Franklin App. No. 84AP-1035, unreported (1985 Opinions 1958). The reversal led to appellee's release on July 3, 1985. At the time of his release, appellee was institutionalized at the Training Institute of Central Ohio ("TICO"). Appellee served a total of one year and three weeks, of which just over eight months was spent at TICO.

Appellee commenced this action on January 7, 1987 in the court of common pleas seeking damages for wrongful imprisonment under R.C. 2743.48. Several procedural problems arose during the course of the proceedings which will be discussed, where relevant, within the text of the opinion. The matter was submitted to the trial court on stipulated facts and briefs. The trial court held that appellee was a wrongfully imprisoned individual as envisioned by R.C. 2743.48, thus permitting him to commence an action against the state in the Court of Claims.

Appellant does not take issue with the trial court's factual determinations but, rather, raises one primary legal issue; does R.C. 2743.48 apply to juveniles who are wrongfully imprisoned?

Appellant's fifth assignment of error is important to our determination of this appeal. By this assignment of error, appellant contends that the trial court erred by liberally construing R.C. 2743.48. Appellant argues that, since the statute is a waiver of sovereign immunity, it must be strictly construed.

Generally, statutes constituting a waiver of sovereign immunity are to be strictly construed; *Covent Ins. Co., Ltd. v. Carroll Cty. Commrs.* (1981), 2 Ohio App. 3d 410; the reason being that any waiver of the states immunity is in derogation of the common law. However, R.C. 1.11 limits this rule in situations where a remedial law is at issue as follows:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. The rule of the common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws; but this section does not require a liberal construction of laws affecting personal liberty, relating to amercement, or of a penal nature."

Typically, courts are called upon to determine if statutes are remedial in nature under two circumstances: (1) to decide what method of construction is to be used; and (2) to determine whether a statute is to be prospectively or retrospectively applied. When deciding statutory construction issues, courts normally speak in terms of remedial versus penal statutes. A penal statute is usually one that imposes a penalty or creates a forfeiture. Remedial legislation, on the other hand, is enacted to correct past defects, to redress an existing wrong; or to promote the public good. See, generally, 85 Ohio Jurisprudence 3d 26, Section 13, et seq.

Under circumstances where the issue is retroactivity, courts speak in terms of a substantive or procedural right. As the Supreme Court has stated:

"*** [I]n general terms, substantive law is that which creates duties, rights, and obligations, while procedural or remedial law prescribes methods of enforcement of rights or obtaining redress. ***" *State, ex rel. Holdridge, v. Indus. Comm.* (1967), 11 Ohio St. 2d 175. at 78

However, the distinction between the two contexts is not clearcut and the definitions are not mutually exclusive depending on, the context. No absolute definition of remedial legislation has been offered and each statute must be addressed on its merits within the context of the facts presented. *Id.*

There existed no remedy at common law for a wrongfully imprisoned citizen to pursue an action against the state for damages incurred as

a result of his incarceration. In this regard, R.C. 2743.48 is a remedial statute in that it addresses an existing wrong. The General Assembly determined that it was patently wrong to deny a person compensation when the judicial system failed to adequately safeguard his rights, under the circumstances set forth in the statute.

It does not appear that the legislature intended the remedy to be penal in nature. R.C. 2743.48(E)(2) limits the plaintiff's recovery to actual damages incurred, plus $25,000 for each year in prison. It appears that the General Assembly believed that $25,000 was an amount necessary to compensate the aggrieved individual for the loss of a year's freedom, thereby making that part of the award an element of actual compensatory damages. Punitive damages are not allowed and the award caps serve to reiterate this point.

If the substantive-procedural standard is applied, a different conclusion may be reached. While R.C. Chapter 2743, establishing the Court of Claims, provide for a waiver of the state's immunity, it did so only in a limited manner predicated upon claims for relief for which the state would previously have been liable in accordance with the rules of law applicable to suits between private parties except for sovereign immunity. R.C. 2743.02(A); *Smith v. Wait* (1975), 46 Ohio App. 2d 281. The Court of Claims Act did not authorize a new claim allowing a civil action against the state for wrongful imprisonment. That action became viable only upon the adoption of R.C. 2743.48 by the General Assembly. R.C. 2743.48 created duties, rights, and obligations of a substantive nature.

Thus, we must determine which of two conflicting propositions, one of which supports a liberal construction and one of which supports a strict construction, is best applied to R.C. 2743.48 which is both remedial and substantive in nature.

In applying rules of construction, the cardinal principle is that the intent of the legislature be preserved. It would appear that the general flavor of R.C. 2743.48 is remedial to correct past injustices and that the remedial intent should be honored if there is ambiguity by adopting a liberal construction of the statute. Thus, we resolve this issue by determining that the trial court did not err in applying a rule of liberal construction.

Appellant's fifth assignment of error is overruled.

By its first assignment of error, appellant argues that the trial court erred in interpreting Ohio's wrongful imprisonment statute to apply to juveniles. R.C. 2743.48(A) provides:

"(A) As used in this section, a 'wrongfully imprisoned individual' means an individual who satisfies each of the following:

"(1) He was charged with a violation of a section of the Revised Code by an indictment or information prior to, or on or after, September 24, 1986, and the violation charged was an aggravated felony or felony.

"(2) He was found guilty of, but did not plead guilty to the particular charge or a lesser-included offense by the court or jury involved, and the offense of which he was found guilty was an aggravated felony or felony.

"(3) He was sentenced to an indefinite or definite term of imprisonment in a state penal or reformatory institution for the offense of which he was found guilty.

"(4) The individual's conviction was vacated or was dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

"(5) Subsequent to his sentencing and during or subsequent to his imprisonment, it was determined by a court of common pleas that the offense of which he was found guilty, including all lesser included offenses, either was not committed by him or was not committed by any person."

In our tripart system of government, the power to make law is vested within the legislature and not the judicial branch. No legislature, regardless of foresight, can anticipate every situation that is likely to arise. Therefore, courts are called upon to interpret laws when unique fact patterns are presented. However, the court can only interpret and not legislate. *Seeley v. Expert, Inc.* (1971), 26 Ohio St. 2d 61. It is not the judiciary's function to rewrite laws according to-what the court perceives as just but to enforce the literal writing of the statute whenever possible. *Board of Edn. v. Fulton County Budget Comm.* (1975), 41 Ohio St. 2d 147. Regardless of the method of interpretation used, absent ambiguity, a court will not delve into legislative intent but will give effect to the

plain meaning of the statute, R.C. 1.49, even when a court believes that a statute results in an unfavorable outcome. It is the province of the legislature to gauge public sentiment and to determine what is just.

R.C. 2743.48 is written strictly in adult criminal language. It must be presumed that the legislature knew of the separate and independent procedures used in the juvenile justice system when it chose the words that it did. R.C. 2743.48(A) provides five criteria that must be satisfied before a litigant may be eligible to seek compensation for wrongful imprisonment. An analysis of these five prerequisites leads to the conclusion that R.C. 2743.48 does not apply to actions based upon a juvenile proceeding.

Appellant does not dispute that appellee's original sentence was reversed and that, in the trial court proceeding, appellee met his burden by proving that he did not commit the offense of which he was charged. Therefore, R.C. 2743.48(A)(4) and (5) have been conceded *and* are not issues before us.

Subsection (A) (1) provides that only those charged, by information or indictment may seek redress. A juvenile proceeding is commenced by a complaint which seems to remove appellee from the reach of the statute. However, Crim. R. 3 permits an adult felony conviction to be predicated upon a complaint and there are many other code provisions that appear to use the three terms interchangeably. See R.C. 2945.75, R.C. 2931.29, R.C. 2151.25. In effect, there is no distinction between the three procedural devices. Liberally construing the statute, we see no reason to segregate a conviction predicated upon a complaint from one premised upon an indictment or information and therefore, the fact that appellee was charged by complaint is not fatal to his claim for relief.

R.C. 2743.48(A)(2) and (3), however, are fatal to appellee's claim. No matter how this statute is interpreted, the plain and unambiguous language chosen by the General Assembly leads to the inescapable conclusion that the statute was meant to apply to adults only. Subsection (A)(2) states that the person must be found guilty of a "charge" or "offense." This court has previously held that the term "offense" is synonymous with the word "crime." *Walden v. State* (June 16, 1988), Franklin App. No. 87AP-1026, unreported (1988 Opinions 2130). The same argument that appellee now advances was rejected by the Supreme Court in its affirmance of *Walden. Walden v. State*

(1989), 47 Ohio St. 3d 47. The same logic applies to the term "charge." Furthermore, it is well-established that an act committed by a juvenile is not a crime. *State v. Hale* (1969), 21 Ohio App. 2d 207; *State v. Weeks* (April 28, 1987), Franklin App. No. 86AP-866, unreported (1987 Opinions 641). Appellee was not found guilty of a crime, charge or offense, but was adjudicated a delinquent. To read R.C. 2743.48 in any other manner would be tantamount to judicial legislation which is unacceptable.

R.C. 2743.48(A) (3) contains the final requirement and provides that the person must have been sentenced to a term of imprisonment in a state penal or a reformatory institution. Appellee argues that a penal facility is not defined in the code and, therefore, that a maximum security youth facility must be construed as a penal facility. Even if we were to accept this argument, it does not address the fact that appellee was adjudicated a delinquent and committed to the Department of Youth Services and not sentenced to a term of imprisonment. Ohio maintains two separate judicatory systems with two separate aims. The distinctions between the adult and juvenile system are numerous and clear. The legislature was aware of the distinctions but chose to fashion R.C. 2743.48 in adult terms only. No method of construction will allow this court to rewrite the clear language of the statute.

We further note that our research of comparable legislation in other states has failed to find a case which has granted a juvenile a cause of action for wrongful imprisonment which is perhaps indicative of the sentiment that adults and juveniles are to be treated differently in respect to reimbursement for wrongful imprisonment just as they are treated differently in other aspects of the criminal justice system.

Appellant's first assignment of error is sustained.

By its second assignment of error, appellant argues that the trial court erred in finding that R.C. 2743.48 violated equal protection. The trial court's written decision does not mention the Equal Protection Clause and we will not speculate as to what was going through the trial judge's mind when the decision was written. There were adequate reasons given in support of the trial court's judgment without reaching the constitutional issue We will not guess at what the trial court was *"sub silentio* weaving" into its decision. When an issue is not decided

at the trial level, we will not address it at the appellate level, particularly in light of the maxim that a decision should be rendered on nonconstitutional grounds first, if possible.

Appellant's second assignment of error is overruled.

Appellant's third assignment of error contends that the trial court erred by considering the legislative testimony of Stephen Samuels. As part of his memorandum contra to appellant's motion to dismiss/motion for summary judgment, appellee submitted the testimony of Samuels. At the time Ohio's wrongful imprisonment statute was passed, Samuels was the chief of the Court of Claims Defense Section of the Office of the Attorney General. He testified in support of the legislation on behalf of the Attorney General's office. Appellee introduced the testimony in an attempt to establish legislative intent.

Generally, the admission of evidence is within the sound discretion of the trial court. After admitting the evidence, the trier of fact then determines the weight and credibility of the evidence. Appellant did not object to the admission of the exhibit at trial and, in fact, cites Samuels' testimony in support of its position in its reply memorandum.

R.C. 2743.48(A) (2) and (3) are unambiguous and, therefore, R.C. 1.49 would preclude a court from considering legislative intent. However, subsection (A) (1) is not as plain on its face and evidence of legislative intent may have been properly admitted. The trial court mentions the disputed testimony in passing but it appears that it did not use it as a basis for its decision. The testimony of Samuels might have, in some way, been relevant and since appellant did not object to its use but, in fact, encouraged it, the trial court did not abuse its discretion in admitting the evidence.

Appellant's third assignment of error is overruled.

Appellant fourthly asserts that the trial court erred by construing its motion as a motion to dismiss. Prior to trial, appellant submitted a motion styled as a motion to dismiss but it predicated its motion upon Civ. R. 56, summary judgment. The trial court stated that it would construe the motion as one to dismiss since appellant had brought about the confusion.

For a complaint to be dismissed for failure to state a claim, it must appear beyond doubt from the face of the complaint that plaintiff can prove no set of facts entitling him to relief. *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St. 2d 242. The trial court is prohibited from looking beyond the complaint to additional evidence submitted by the parties. If a trial court considers evidence outside the complaint, it must follow the procedures and apply the tests outlined in Civ. R. 56.

The trial court did not state what test it was applying when it ruled on appellant's motion. The decision merely states that it would construe the motion as one to dismiss but, then, the trial court looked at documentary evidence other than the complaint. In this regard, the trial court, despite what was written, did treat the motion one for summary judgment. There is nothing in the record indicating that the motion was to be treated as bone for summary judgment. No notice was sent out and no hearing date was established. By not following the procedures outlined in Civ. R. 56, but by considering items outside the complaint, the trial court did err. However, the error was not prejudicial since the same result should have pertained regardless of whether the case was decided on a motion to dismiss or a motion for summary judgment.

Appellant's fourth assignment of error is overruled.

Appellant's second, third, fourth, and fifth assignments of error are overruled. Appellant's first assignment of error is sustained. The judgment of the trial court is reversed and the case is remanded to the trial court with instructions to enter final judgment for defendant.

*Judgment reversed case remanded.*

BRYANT and CURL, J.J., concur.

CURL, J., of the Morrow County Common Pleas Court, sitting by assignment in the Tenth Appellate District.