**MCI TELECOMMUNICATIONS CORPORATION, Appellant,**

**v.**

**TRACY, Tax Commr., Appellee.**

[Cite as *MCI Telecommunications Corp. v. Tracy* (1992), 84 Ohio App.3d 465.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–966, 92AP–967, 92AP–968 and 92AP–969.

Decided Dec. 31, 1992.

*Walter Nagel* and *Douglas A. Richards; Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.*, for appellant.

*Lee Fisher*, Attorney General, and *Barton A. Hubbard*, Assistant Attorney General, for appellee.

McCormac, Judge.

Appellant, MCI Telecommunications Corporation ("MCI"), appeals the decisions of the Ohio Board of Tax Appeals ("BTA"), wherein the BTA affirmed the final determinations of the Ohio Tax Commissioner, appellee, regarding appellant's public utility excise tax, or "gross receipts tax," liability for report years 1983, 1985, 1986 and 1987. The appeals for the above years are consolidated

herein. Report year 1984 is not before us, as appellant has a claim for refund for that year currently pending before the Tax Commissioner.

Beginning with report year 1983, appellant was required to include in its excise (gross receipts) tax base that portion of receipts received from customers which it paid to local telephone companies for access services in originating or terminating intrastate long distance telephone calls. Up through 1983 (the last pre-divestiture year), American Telephone and Telegraph Company's ("AT & T") operating subsidiary, Ohio Telephone and Telegraph Company ("OT & T"), was not required to include in its gross receipts tax base those amounts it paid to local telephone companies for access services. Instead, the amounts that appeared on each of the participating companies' books were taxed as revenue. The local companies by agreement with OT & T collected the entire amount, but the only amount that was taxed was what was reflected on their books. "Actually received" was construed in an accounting sense, rather than what was physically received. However, in the case of MCI, it collected the entire amount, which it recorded as revenue, and it was all considered taxable based upon the accounting procedure used by the company. Apparently, before divestiture local companies were not required to collect for intrastate long distance calls for MCI and they did not do so. Accountingwise, MCI collected the entire amount and, after so listing the full amount as receipts, paid the local companies for the access purchased from them. After 1983, *i.e.*, after divestiture, all companies operated on the same basis with respect to payment for or collection of revenues for intrastate long distance telephone calls.

Divestiture brought about changes in addition to the "break-up" of AT & T and its related local telephone companies. (The court ordered divestiture in *United States v. Am. Tel. & Tel. Co.* [D.C.D.C.1982], 552 F.Supp. 131, affirmed [1983], 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472.) Following divestiture, local telephone companies were not required to collect for long distance calls. It became the responsibility of the long distance carrier to bill a customer for the entire cost of the call. OT & T became responsible for collecting charges sufficient to cover the obligation to compensate local telephone companies. In addition, the FCC rules governing how regulated companies could divide up revenue also changed. OT & T's payments to local telephone companies for access services became more in the nature of an expense under FCC accounting rules and, therefore, OT & T became similar to appellant in that respect. All long distance carriers, including both OT & T and appellant, had to go to each local telephone company and purchase access services.

In September 1984, the Ohio Department of Taxation issued an informational release informing local telephone companies that the amount of money received by long distance carriers for access was subject to taxation unless a statutory

exemption applied. It also informed long distance carriers, who are paying access charges and recording them as an expense, that a reduction of gross receipts was not permitted.

For each of the years at issue, appellant included in its gross receipts the payments made to local companies for access. Appellant then filed with appellee applications for review and redetermination of its gross receipts tax base for 1983, 1985, 1986 and 1987, claiming a right to exclude these payments.

Appellee denied the request, finding no discrimination and finding *Sandusky Gas & Elec. Co. v. State* (1926), 114 Ohio St. 479, 151 N.E. 685, to require inclusion. Under *Sandusky*, similar payments were held to be expenses and, therefore, not deductible from gross receipts. Upon appeal to the BTA, appellant was again denied the exclusion as the BTA agreed with the rationale and the findings of appellee.

Appellant appeals to this court as of right pursuant to R.C. 5717.04 and now asserts the following three assignments of error:

"I. The BTA erred in concluding that R.C. 5727.32(H)(1) does not require the commissioner to exclude from the excise tax base of a long distance telephone company amounts paid to local telephone companies in Ohio for originating or terminating intrastate long distance telephone calls.

"II. The BTA erred in concluding that the commissioner could raise by brief a claim that MCI failed to prove that the amounts paid to local telephone companies for originating or terminating intrastate long distance telephone calls that were deducted in its original reports were accurate when this was not a basis used by the commissioner for affirming the original assessments.

"III. The BTA erred in concluding that MCI was not denied equal protection of the laws in violation of the United States and Ohio Constitutions because a competing company, OT & T, was not required to include in its gross receipts tax base for the 1983 report year amounts paid to local telephone companies for originating or terminating intrastate long distance telephone calls."

Decisions of the Board of Tax Appeals are reviewed by a court according to whether it appears from the record that such decision is unreasonable or unlawful. R.C. 5717.04; *3535 Salem Corp. v. Lindley* (1979), 58 Ohio St.2d 210, 212, 12 O.O.3d 203, 204, 389 N.E.2d 508, 509.

Appellant alleges in its first assignment of error that the BTA unreasonably and unlawfully concluded that R.C. 5727.32(H)(1) does not permit appellant to exclude from its Ohio excise (gross receipts) tax base that portion of the charge appellant receives from customers on each intrastate long distance call that is paid to local telephone companies for access services.

R.C. 5727.32(H)(1), as applicable during the period at issue here, provided in regard to reporting of gross earnings as follows:

"(H) In the case of telegraph and telephone companies:

"(1) The gross receipts from all sources, whether messages, telephone tolls, rentals, or otherwise, for business done within this state, including all sums earned or charged, whether actually received or not, for the year ending the thirtieth day of June, and the company's proportion of gross receipts for business done by it within this state in connection with other companies, firms, corporations, persons, or associations, but excluding all receipts derived wholly from interstate business or business done for the federal government[.]"   138 Ohio Laws, Part I, 1780, 1790, 1791.

As previously noted, the charge for long distance telephone calls made by appellant for customers includes a charge for access services provided by local telephone companies who originate or terminate long distance calls.   Appellant claims that each long distance call is a "joint product" between itself, as a long distance carrier, and local companies who provide origination or termination services to complete the call.   Appellant alleges that, because each long distance call is a joint product, its "proportion of gross receipts for business done by it within this state" does not include the receipts for interconnection costs or carrier access charges paid to local telephone companies.   "Interconnection costs" was the term used prior to divestiture for the compensation of local companies. Following divestiture (beginning 1984), this terminology was changed to "carrier access charge."

The fact that a long distance telephone call may be a joint product between a long distance carrier and local companies does not of itself bring appellant within one of the specific statutory exclusions.   Nor does it entitle appellant to include a less-than-one-hundred-percent proportion of the amounts it received from customers in payment of the long distance telephone calls.

The Ohio Supreme Court addressed this issue in *Sandusky,* wherein the court denied a gas company's request to exclude from its gross receipts tax base the amounts paid to another gas company for the purchase of gas that it resold to customers.   In denying the exclusion from its gross receipts, the court held that:

"The words 'entire gross receipts,' as used in Sections 5417, 5474, 5475 and 5483, General Code, providing for the imposition of an excise tax upon public utility companies, mean and include the entire receipts of such company from the intrastate business done by it under the exercise of its corporate powers, whether from the operation of the utility itself or from any other business done by it." *Sandusky,* at paragraph one of the syllabus.

The court further held that, where the only liability created between the alleged "joint venturers" is the obligation to pay for the gas delivered (or, as here, the service provided), the relationship is that of a mere debtor-creditor. *Id.*, 114 Ohio St. at 487, 151 N.E. at 688. Although appellant claims an entitlement to exclusion under R.C. 5727.32(H)(1) on grounds other than a "joint venture" relationship, impliedly acknowledging that it fails to meet the standards for that relationship with its local providers, we believe that *Sandusky* requires a finding of a joint venture or agency relationship for the total revenue to be divided between MCI and its local providers. Absent a joint venture or collection agency agreement, there is no basis for "sharing" revenue. The payments were indeed costs incurred for the purchase of access, as appellant did not establish a relationship entitling it to a shared revenue arrangement. The payments constitute an expense and, therefore, may not be deducted from gross receipts unless a clear statutory exemption applies.

Applying the plain language of the statute and giving full effect to all of the words therein, appellant's "proportion of gross receipts for business done by it within this state" constitutes one hundred percent of the receipts it collected from customers for intrastate long distance calls, unless divisible by the finding of a joint venture, or, possibly, by contract where, even though one carrier collects the total amount, it is not accounted for as receipts except as to the amount to which it is entitled. That arrangement would have to be something other than a debtor-creditor arrangement.

Appellant claims that *Sandusky* is inapplicable today because the legislature amended R.C. 5727.33 in 1961 to include an exemption for receipts from sales to other public utilities. See 129 Ohio Laws 1506. That exemption, however, expressly excluded telephone companies. Thus, the Supreme Court's holding in *Sandusky* applies, as nothing other than a debtor-creditor arrangement was proved.

Appellant further attempts to distinguish *Sandusky* by claiming that a long distance telephone call is a joint and concurrent service with the local telephone companies, not a mere purchase and sale. Under *Sandusky*, a long distance telephone call, although a joint and concurrent service, constitutes only a purchase and sale of access services absent a joint venture or collection agency agreement.

■ It is also alleged that R.C. 5727.32(H)(1) was not amended during the 1983 to 1987 period and, consequently, there is no reason to apply it differently than during the pre-divestiture period when OT & T was allowed the exclusion. Absent ambiguity, courts will not delve into legislative intent but will give effect to the plain meaning. *Wright v. State* (1990), 69 Ohio App.3d 775, 781, 591 N.E.2d 1279, 1282–1283. Therefore, only when the meaning is ambiguous are

courts permitted to interpret statutes. *Id.; Bd. of Edn. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 305, 324 N.E.2d 566, 571.

The statute is clear. Appellant must include in its annual statement "gross receipts from all sources * * * for business done within this state * * * and the company's proportion of gross receipts for business done by it within this state in connection with other companies * * *." R.C. 5727.32(H)(1). Appellant charged and collected the entire cost of the long distance telephone call, including the portion covering the cost of access. Appellant has not shown that its proportion constitutes less than one hundred percent (absent other statutory exclusions) of its gross receipts. This court may not lawfully apply any meaning other than the plain meaning of the statute. To do so would intrude upon the role of the legislature. Courts may not legislate. *Wright,* 69 Ohio App.3d at 781, 591 N.E.2d at 1282–1283.

The legislature has, in fact, amended the statute so that today these payments would be excluded under R.C. 5727.33 and 5727.32(H). We are not at liberty to change the plain language of the statutes as they were written during the period at issue here. Moreover, exclusions are to be strictly construed, and the exclusion (as it existed during this period) in R.C. 5727.33, regarding sales to other public utilities described in R.C. 5727.32(I) for resale, expressly excluded telephone companies.

In addition, appellant claims that the fact that a telephone company might be permitted to use a different method of accounting for revenue, or that a regulated company might have to account for revenue differently, does not authorize appellee to treat the payments differently for Ohio tax purposes. Appellant claims this results in an unlawful delegation of legislative authority.

As more fully explained under appellant's third assignment of error, the Ohio Supreme Court has upheld, as lawful, different tax treatments based on different methods of accounting. *Natl. Tube Co. v. Peck* (1953), 159 Ohio St. 98, 50 O.O. 74, 111 N.E.2d 11. Furthermore, the Administrator of the Public Utility Tax Division of the Ohio Department of Taxation testified that it was the practice of the appellee to "use whatever method the companies use for accounting for revenues" when determining the gross receipts tax base. For all of the above reasons, the plain language of the statute must be applied to deny the exclusion sought.

Appellant's first assignment of error is overruled.

It is not necessary to address appellant's second assignment of error. The exclusions are disallowed; therefore, the issue of whether appellant was required to prove the accuracy of the amount sought to be excluded is moot.

■ In its third assignment of error, appellant claims that the BTA unreasonably and unlawfully concluded that appellant was not denied the equal protection of the laws when OT & T was permitted to exclude its payments in 1983, while appellant was not.

Although the BTA does not have jurisdiction to decide constitutional issues, the constitutionality of a tax statute, as applied to a given taxpayer, must be raised before the BTA, which must in turn hear evidence on the issue. *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 520 N.E.2d 188, paragraph three of the syllabus. Upon review of the evidence, we find appellee did not violate appellant's right to equal protection of the law.

■ The right of equal protection is violated only when those similarly situated are unequally burdened. Appellant claims that OT & T and appellant are similarly situated because the nature of their services was the same and both are classified as telephone companies. Although this may be true, report year 1983 was a pre-divestiture year. During that time, local telephone companies collected for OT & T, under division of revenue agreements, which did not apply to appellant. The local telephone companies collecting for OT & T would keep their portion of the charge and forward the balance to OT & T, each recording only the amounts that they were entitled to under the agreements. Appellant, on the other hand, billed and collected the entire long distance charge and thereafter paid the local carrier for its service. Even though the practical effect may have been the same, legally the obligations were different. Therefore, the composition of appellant's actual receipts differed from that of OT & T.

Although testimony established that gross receipts tax liability was measured solely by how revenues were accounted for, and not who collected them, appellant was not required to use FCC accounting, whereas OT & T was so required. Appellant did not establish that it used the same accounting method as OT & T. Rather, appellant argues that taxation, which depends upon the method of accounting used, is an arbitrary and capricious classification of taxpayers.

The Ohio Supreme Court has upheld as constitutional the unequal tax treatment resulting from the application of differing accounting methods. In *Natl. Tube Co.*, 159 Ohio St. at 107, 50 O.O. at 78, 111 N.E.2d at 16, the court held that, where taxpayers use different methods of accounting for book value of shares of stock, the unequal tax treatment which results is not a violation of the right to equal protection of the laws. Specifically, the court held:

" * * * 'The equal protection clause does not require the state to maintain a rigid rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or

capricious, do not fall within constitutional prohibitions.'" *Id.* at 107, 50 O.O. at 78, 111 N.E.2d at 16, citing *Lawrence v. State Tax Comm. of Mississippi* (1932), 286 U.S. 276, 284, 52 S.Ct. 556, 559, 76 L.Ed. 1102, 1108.

Thus, the unequal tax treatment based on the accounting methods used was not an arbitrary or capricious classification. Appellant and OT & T were not similarly situated because appellant did not have a joint venture or other shared revenue arrangement with the local telephone companies, as was required under *Sandusky,* and as did OT & T.

Appellant's third assignment of error is overruled.

Appellant's assignments of error are overruled and the decisions of the Ohio Board of Tax Appeals are affirmed.

*Decisions affirmed.*

YOUNG, P.J., and BOWMAN, J., concur.