### In re WOODSON.

[Cite as *In re Woodson* (1994), 98 Ohio App.3d 678.]

Court of Appeals of Ohio,
Franklin County.

Nos. 94APF03–395, 94APF03–396.

Decided Nov. 22, 1994.

*David P. Rieser,* for appellant.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Tony Clymer,* Assistant Prosecuting Attorney, for appellee state of Ohio.

*Judith M. Stevenson,* Franklin County Public Defender, *Paul Skendelas* and *David Strait,* Assistant Public Defenders, for *amicus curiae.*

PEGGY BRYANT, Judge.

Defendant-appellant, Thomas Woodson, appeals from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, adjudicating defendant a delinquent minor on one count of escape in violation of R.C. 2921.34(C)(2)(d), a felony of the fourth degree if committed by an adult, and one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree if committed by an adult.

On July 26, 1993, defendant was arraigned in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, on one count each of escape, felonious assault, theft of a motor vehicle, and receiving stolen property. Defendant entered denials to each count.

On August 11 and 12 and September 1, 1993, an adjudication hearing was held before a juvenile court referee. At the conclusion of the hearing, defendant was found to be a delinquent minor on all four counts. Following a dispositional hearing on September 17, 1993, the referee issued a report recommending closure of the theft and receiving stolen property counts, permanent commitment to the Ohio Department of Youth Services ("DYS") for a minimum period of twelve months on the felonious assault count, and a second permanent commitment for a minimum period of six months, consecutive to the first, on the escape count.

Defendant filed objections to the referee's report. On February 18, 1994, the trial court rendered a decision overruling defendant's objections, adopting the referee's report in all respects, and concluding that the juvenile court is authorized to order consecutive periods of confinement pursuant to R.C. 2151.355(A)(11). Defendant appeals, assigning the following errors:

"Assignment of Error No. 1:

"The juvenile court was without jurisdiction to order consecutive commitments during the dispositional hearing where the fundamental principles of statutory construction, the express language of Ohio Revised Code Chapters 2151 and 5139, and the underlying purpose of the juvenile justice system prohibit the juvenile court from presuming authority to issue an order of consecutive commitments.

"Assignment of Error No. 2:

"The juvenile court erred in failing to read Revised Code Sections 2921.34 and 2151.355 in pari materia and in a manner giving meaning and effect to both statutes."

Defendant's two assignments of error together assert that the juvenile court is not authorized to order that the minimum periods of confinement on two permanent commitments to DYS be served consecutively. Thus, we address both assignments of error jointly.

Generally, R.C. 2151.355(A) sets forth the consequences of a juvenile's having been adjudicated delinquent. Depending on the degree of felony the offense carries if committed by an adult, a delinquent's actions may result in confinement in an institution of DYS for (1) a minimum period of six months to a maximum of age twenty-one, R.C. 2151.355(A)(4), (2) a minimum period of one year to a maximum of age twenty-one, R.C. 2151.355(A)(5), or (3) to age twenty-one, R.C. 2151.355(A)(6).

Generally defining the crimes which may form the basis for finding a juvenile to be a delinquent minor, R.C. Title 29 includes R.C. 2921.34, which prohibits escape from detention. By its terms, R.C. 2921.34 applies to juveniles who are adjudicated delinquents, as the subsections of R.C. 2921.34(C) specifically define the degree of the offense of escape for juvenile escapees depending on the offense for which the juvenile was under detention. The controversy in this case surrounds the language of R.C. 2921.34(C)(3), which mandates that confinement under the statute shall be consecutive to any other "sentence of confinement." Specifically, defendant argues that R.C. 2921.34(C)(3) is inapplicable to juvenile commitments, as the General Assembly's use of the term "sentence" in R.C. 2921.34(C)(3) indicates the legislature's intention that the provision apply only to adult escapees.

"Sentence" of imprisonment generally refers to the penalty imposed in an adult criminal proceeding, while "commitment" refers to the disposition ordered in a juvenile proceeding. *Wright v. State* (1990), 69 Ohio App.3d 775, 782, 591 N.E.2d 1279, 1283–1284; R.C. 2151.355(A). Nonetheless, language of R.C. 2921.34(C) suggests that the legislature intended R.C. 2921.34(C)(3) to apply to juvenile escapees, so that "sentence of confinement" encompasses both an adult sentence of imprisonment and a juvenile "sentence" of commitment.

More particularly, R.C. 2921.34(C)(3) requires that "such offender" serve consecutive sentences of confinement; "such offender" in turn is defined in R.C. 2921.34(C)(2) to include a person who "was under detention as an alleged or adjudicated delinquent child" at the time of the escape. Thus, the "offender" under R.C. 2921.34(C)(3) who must serve a "sentence of confinement" imposed for escape consecutively to any other confinement includes adjudicated delinquents who escape from detention.

Indeed, R.C. 2921.34(C) was amended in 1991 to include juvenile escapees in its coverage.[1] H.B. No. 298, Section 1, 1991 Ohio Leg.Serv. 5–471; *In re Bremmer* (Apr. 1, 1993), Cuyahoga App. No. 62088, unreported, 1993 WL 95556. While H.B. No. 42, Section 1, 1993 Ohio Leg.Serv. 5–1058, amended R.C. 2921.34 to further clarify the consequences of conviction for escape, and in so doing separated the mandatory consecutive confinement provision into a separate subsection, it in no way suggests that the legislature intended to excuse juveniles from the consequences of an escape conviction or additional confinement.

Defendant argues, however, that because consecutive "sentencing" is punitive, the application of R.C. 2921.34(C)(3) to juvenile escapees conflicts with the rehabilitative purpose of the juvenile system as expressed in R.C. Chapter 2151. In order to reconcile the conflict between these provisions, defendant argues that R.C. 2921.34(C)(3) must be construed to apply only to persons who escape from juvenile detention after they have attained the age of majority.

The objective of the juvenile system is rehabilitation rather than punishment. Nonetheless, *In re Agler* (1969), 19 Ohio St.2d 70, 72–73, 48 O.O.2d 85, 86–87, 249

---

1. By amendment in 1991, R.C. 2921.34(C) provided:

"Whoever violates this section is guilty of escape. IF THE OFFENDER, AT THE TIME OF THE COMMISSION OF THE OFFENSE, WAS UNDER DETENTION IN A SECURE OR NONSECURE FACILITY AS AN ALLEGED OR ADJUDICATED DELINQUENT OR UNRULY CHILD, IF THE DETENTION WAS PURSUANT TO AN ORDER OF A JUVENILE COURT, AND IF THE ACT FOR WHICH THE OFFENDER WAS UNDER DETENTION WOULD NOT BE A FELONY IF COMMITTED BY AN ADULT, ESCAPE IS A MISDEMEANOR OF THE FIRST DEGREE. IF THE OFFENDER, AT THE TIME OF THE COMMISSION OF THE OFFENSE, WAS UNDER DETENTION IN ANY OTHER MANNER, ESCAPE IS a felony of the fourth degree. Sentence of confinement imposed for escape shall be served consecutively to any other sentence of confinement imposed on such offender."

N.E.2d 808, 810–811, and *State v. Grady* (1981), 3 Ohio App.3d 174, 177, 3 OBR 199, 202–203, 444 N.E.2d 51, 54–55, hold that increased minimum commitment to an institution of DYS, which is the net result of consecutive "sentences" under R.C. 2921.34, may be consistent with the overall rehabilitative objective of the juvenile justice system. Indeed, the limited and carefully regulated additional period of minimum confinement mandated by R.C. 2921.34(C)(3) may serve to deter escape by those juveniles who previously perceived that escape carried no additional mandatory consequences. Obviously, juveniles who have escaped from DYS detention and are no longer in custody cannot be rehabilitated by DYS. To the extent that R.C. 2921.34(C)(3) deters juveniles from escaping from DYS custody, the provision may serve to aid DYS in its rehabilitative efforts.

Further, any potential harshness resulting from applying R.C. 2921.34(C)(3) to juveniles is significantly mitigated by R.C. 2151.38, which authorizes the juvenile court to release juveniles prior to the expiration of their prescribed minimum period of detention if the court deems such release appropriate. Thus, a juvenile confined to an additional period of minimum confinement for escape may still be released prior to the expiration of the combined minimum periods of confinement at the discretion of the juvenile court.

However, even if we were to conclude that R.C. 2921.34(C)(3) has punitive aspects, that alone does not prevent application of that statute to juvenile escapees. The juvenile justice system, together with its rehabilitative objective, is purely a statutory creation, *Agler, supra*, and it may contain punitive elements. Indeed, consecutive minimum confinements mandated by R.C. 2921.34 are no more punitive than the statutory scheme set forth in R.C. 2151.355(A)(4) through (6), which in itself requires greater minimum confinement depending on the offense committed.

Finally, the imposition of consecutive minimum periods of confinement is not internally inconsistent. We recognize that a juvenile once committed is not to be released until he or she is rehabilitated and thus presumably is not in further need of additional commitment. Nonetheless, we perceive no reason why the legislature cannot require that in instances of escape a juvenile must be confined not only to the original minimum period of confinement, but also an additional minimum period of confinement, given that the escape itself indicates that rehabilitative efforts to that point have been ineffective. Any unnecessary confinement can be mitigated through R.C. 2151.38, as noted earlier.

While the trial court premised its determination on the language of R.C. 2151.355(A)(11),[2] we need not address that issue. The facts before us implicate

---

**2.** R.C. 2151.355(A)(11) provides:

R.C. 2921.34(C)(3), which in itself mandates the imposition of consecutive minimum periods of confinement in the circumstances of this case; thus, we decide only the issues raised by the facts of the case before us.

Defendant's first and second assignments of error are overruled, and the judgments of the trial court are affirmed.

*Judgments affirmed.*

DESHLER, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

Because I disagree with the majority's resolution of the important legal issue presented by this case, I respectfully dissent.

The majority does not address the bigger question of whether consecutive permanent commitments are permissible in general but, instead, focuses solely upon the wording of R.C. 2921.34 "escape" to resolve this case. However, juveniles are not sentenced pursuant to R.C. Title 29. The disposition of juvenile cases is governed by R.C. 2151.355, the statute interpreted by the juvenile judge when making disposition of Thomas Woodson's cases.

The problem, which sidetracks the majority of this judicial panel, is that the legislature did not modify the correct statute when the legislature attempted to ensure that juveniles who escape receive additional "confinement." As sometimes happens, the legislature attempted to do one seemingly popular thing without addressing or apparently even considering the bigger picture.

Such piecemeal legislative action, especially in the context of the juvenile justice system, is fraught with danger. The central concern of the juvenile justice system has been helping people who are not yet adults to get their lives straightened out. Precisely because the focus has been rehabilitation, not punishment, juveniles have been denied the rights which our legal system provides to adults who face similar criminal charges. Especially important, juveniles have not had the right to a trial by jury.

When the legislature changes the focus of the juvenile justice system to punishment, then the legislature must recognize that the full panoply of rights provided to adults who are accused of criminal conduct must be provided to

"Make any further disposition that the court finds proper, except that the child shall not be placed in any state correctional institution, county, multicounty, or municipal jail or workhouse, or any other place where any adult convicted of crime, under arrest, or charged with crime is held."

juveniles. However, the juvenile justice system of Ohio, as presently configured and financed, is simply unable to provide jury trials to the thousands of juveniles who are alleged to be delinquent minors each year.

I do not agree with the majority that the increase in penalties attempted by the legislature in enacting revisions of R.C. 2921.34, "escape," can reasonably be considered rehabilitation-oriented. I am reminded of the joke about life's truly big lies including the line, "I'm from the government and I'm here to help you."

R.C. 2921.34 clearly was modified to increase punishment for juveniles, not to further their rehabilitation. If the juvenile justice system is to become punishment-oriented because of the current popular desire to "get tough on crime," then the system must be transformed completely. We cannot take advantage of increased mandatory confinement of juveniles without providing increased rights for juveniles. The legislature has not looked at the big picture yet and until it does we, as judges, should not sanction legally incorrect, partial approaches to the very large problem of juvenile crime.

Again, I respectfully dissent.