CHICAGO PACIFIC CORPORATION, APPELLANT,
*v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as *Chicago Pacific Corp. v. Limbach*
(1992), 65 Ohio St.3d 432.]

(No. 92–473—Submitted October 21, 1992—Decided December 11, 1992.)

*Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.,* for appellant.

*Lee I. Fisher,* Attorney General, and *James C. Sauer,* Assistant Attorney General, for appellee.

*Per Curiam.*  R.C. 5711.15 provides:

"A merchant in estimating the value of the personal property held for sale in the course of his business shall take as the criterion the average value of such property, as provided in this section of the Revised Code, which he has had in his business or under his control during the year ending on the day such property is listed for taxation, or the part of such year during which he was engaged in business.  Such average shall be ascertained by taking the amount in value on hand, as nearly as possible, in each month of such year in which he has been engaged in business, adding together such amounts, and dividing the aggregate amount by the number of months that he has been in business during such year.

"As used in this section a 'merchant' is a person who owns or has in possession or subject to his control personal property within this state with the authority to sell it, which has been purchased either in or out of this state,

with a view to being sold at an advanced price or profit, or which has been consigned to him from a place out of this state for the purpose of being sold at a place within the state."

CPC concedes that the commissioner valued the manufacturing inventory according to statute and case law. However, CPC interprets R.C. 5711.15 to permit it to divide the finished goods inventory totals by the number of months it operated any business in Ohio. This would include the months it operated as a manufacturing management consultant and the month it operated as a merchant. CPC contends that R.C. 5711.15 is not clear on whether the average value of merchandising inventory is to be determined by dividing by the number of months a taxpayer was actually engaged in business as a merchant. Consequently, it argues, we should adopt an interpretation favorable to it under *Gulf Oil Corp. v. Kosydar* (1975), 44 Ohio St.2d 208, 73 O.O.2d 507, 339 N.E.2d 820, paragraph one of the syllabus.

The commissioner, on the other hand, maintains that the second paragraph of R.C. 5711.15 defines the business of "merchant" that the first paragraph alludes to. Thus, she argues that the inventory totals must be divided by the number of months that the taxpayer operated in Ohio as a merchant.

*Buckeye Furnace Pipe Co. v. Peck* (1953), 159 Ohio St. 535, 537, 50 O.O. 440, 440–441, 112 N.E.2d 649, 650, explains why Ohio values inventory on an average basis. According to the decision, this process avoids "the obvious inequity which would result from valuation as of any particular tax listing day during the year." This evens for the year the fluctuation of monthly inventory quantities which a business normally experiences. Averaging also removes the influence over business decisions the tax might have since a business might unburden itself of inventory to have as little as possible on a specific tax listing day, if it had to list inventory only as of such date.

In *U.S. Nuclear Corp. v. Lindley* (1980), 61 Ohio St.2d 339, 15 O.O.3d 428, 402 N.E.2d 1178, we decided a case with similar facts but under R.C. 5711.16, which describes how a *manufacturer* is to determine its inventory's average monthly value. In concurring, Justice William B. Brown pointed out that R.C. Chapter 5711 requires listing the *average* value of manufacturing inventory. According to Justice Brown, the method proposed by the taxpayer in that case, which is similar to the argument posited in the instant case, does not yield an average because the numerator has a number corresponding to one entry and the denominator has a number corresponding to twelve entries. The taxpayer's result there represented one-twelfth of the value of the property, not its average value.

Today, we find critical the commissioner's adoption of Ohio Adm.Code 5703–3–16, which provides:

"The value of an inventory required to be listed on the average basis by a taxpayer in the course of his business shall be determined as provided by Revised Code 5711.15 and 5711.16, by considering the number of months of the year ending on the day such property is required to be listed for taxation that such taxpayer has been engaged in business in Ohio either as a merchant or manufacturer, respectively."

This rule requires a merchant to divide its month-end "merchant" inventory total by the number of months that it was engaged in business in Ohio as a merchant, and requires a manufacturer to do likewise with its manufacturing inventory. A properly promulgated administrative rule has the force and effect of law unless it is in clear conflict with the statute or is unreasonable. *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 474, 77 N.E.2d 921, 924; *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97.

In the instant case, R.C. 5711.09 authorizes the commissioner to administer the personal property tax and to "adopt and promulgate rules not inconsistent with sections 5711.01 to 5711.36 of the Revised Code, so that all taxable property shall be listed and assessed for taxation."

Thus, Ohio Adm.Code 5703-3-16, promulgated under R.C. 5711.09, clarifies R.C. 5711.15. It is not in conflict with the statute since it provides a reasonable, supportable interpretation of R.C. 5711.15. That is, R.C. Chapter 5711 calls for listing a merchant's average value of its inventory. We have previously interpreted R.C. 5711.16 to require a manufacturer to divide month-end inventory totals by the number of months the manufacturer was in business as a manufacturer. Requiring the same procedure for merchants is reasonable. Further, the commissioner offers a reasonable interpretation of R.C. 5711.15, that it defines a merchant's business and that this definition should be incorporated into the process of valuing personal property held for sale "in the course of his business." Consequently, the rule controls in this case and directs CPC to divide its month-end merchant inventory total by one, the number of months it operated in Ohio as a merchant.

Next, CPC contends that this treatment for manufacturing and merchant inventories denies it equal protection. According to the testimony of the assistant administrator of the commissioner's personal property tax division, if another taxpayer had been in business in Ohio as a merchant or a manufacturer for the full twelve months in 1987 and had merged Hoover and Rowenta into itself, that taxpayer would be able to divide the acquired inventory by twelve, the number of months it had been in business as a merchant or manufacturer. Thus, the same inventory would be valued differently, depend-

ing on the business circumstances of the taxpayers. According to CPC, this results in disparate treatment for it and denies it equal protection.

According to *Nordlinger v. Hahn* (1992), 505 U.S. ——, ——, 112 S.Ct. 2326, 2331–2332, 120 L.Ed.2d 1, 12:

"The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989, 990–991] (1920).

"As a general rule, 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.' *McGowan v. Maryland,* 366 U.S. 420, 425–426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 398–399] (1961). Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest. See, e.g., *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–441 [105 S.Ct. 3249, 3254–3255, 87 L.Ed.2d 313, 320–321] (1985); *New Orleans v. Dukes,* 427 U.S. 297, 303 [96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517] (1976)."

In *Nordlinger,* the court approved unequal treatment for two classes of real estate taxpayers, new owners and long-time owners. In California, real property is valued at its transaction price with some incremental increases, resulting, in some instances, in dramatically lower values for property transferred in earlier years. The court ascertained at least two rational considerations to justify denying the new owner the benefits of the prior owner's lower assessments. First, the state had a legitimate interest in local neighborhood preservation, continuity, and stability. As to this interest, the court said that the state could decide to structure its taxes to discourage rapid turnover in ownership.

Second, the state legitimately could conclude that a new owner at the time of acquiring this property did not have the same reliance interest warranting protection against higher taxes as does an existing owner. As to this interest, the court stated that the new owner had full information about the scope of future tax liability before acquiring the property and could decide not to complete the purchase at all. "By contrast, the existing owner, already saddled with his purchase, does not have the option of deciding not to buy his

home if taxes become prohibitively high. To meet his tax obligations, he might be forced to sell his home or to divert his income away from the purchase of food, clothing, or other necessities. In short, the State may decide that it is worse to have owned and lost, than never to have owned at all." *Id.*, 505 U.S. at ——, 112 S.Ct. at 2333, 120 L.Ed.2d at 14.

Since CPC does not contend that the classification jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, we must decide, in this case, whether the classification rationally furthers a legitimate state interest.

We rule that the state has a legitimate interest in levying a tax on average business inventory and avoiding the inequality of fluctuating inventories, as discussed in *Buckeye Furnace Pipe Co. v. Peck, supra.* This averaging method, requiring a taxpayer to divide the month-end inventory totals by the number of months a taxpayer operated as a merchant or manufacturer in Ohio, recognizes that this denominator represents the period of time the taxpayer held inventory in Ohio. This system levels the inventory fluctuations based on the time a taxpayer was a merchant or manufacturer holding inventory in Ohio. This interest provides a rational basis for the treatment CPC receives under R.C. 5711.15.

We also note that Rowenta and Hoover disappeared from the tax rolls for tax year 1988, since they no longer existed after the merger. Other than the inventory transferred on December 31, the inventory they held throughout 1987 was not included in any calculations to determine anyone's average monthly value of inventory for tax year 1988. Thus, as another rational basis, this system also encourages taxpayers to continue in existence to the end of the tax year, paying tax on their inventory, and discourages strategic mergers to avoid personal property tax.

CPC cites *Boothe Financial Corp. v. Lindley* (1983), 6 Ohio St.3d 247, 6 OBR 315, 452 N.E.2d 1295, for support. In *Boothe,* we found an equal protection denial for a purchaser-lessor. That taxpayer was required to value equipment it leased to others on its higher acquisition cost *vis-a-vis* the manufacturer-lessor, which valued its equipment on its lower manufacturing cost. We ruled that the gross undervaluation was not justified by the different acquisition costs for the two taxpayers. According to our decision, the tax is assessed on a property's market value, not its acquisition cost.

However, we do not face a similar question here. The acquisition cost here is the same for both taxpayers. The difference arises from how that acquisition cost is averaged by the two taxpayers, one already in business as a merchant or manufacturer, the other new to each particular business. Under *Nordlinger,* the state is able to tax old and new property owners differently

and constitutionally if the classification rationally furthers a legitimate state interest, which we have found exists in this case.

Accordingly, we affirm the decision of the BTA because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.