PICA CORPORATION, INC. et al., Appellants,

v.

TRACY, Tax Commr., Appellee.

[Cite as *PICA Corp., Inc. v. Tracy* (1994), 97 Ohio App.3d 42.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE02–221.

Decided Sept. 13, 1994.

*Crabbe, Brown, Jones, Potts & Schmidt* and *Jeffrey M. Lewis,* for appellants.

*Lee Fisher,* Attorney General, and *Lawrence D. Pratt,* Assistant Attorney General, for appellee.

CLOSE, Judge.

Plaintiffs-appellants, PICA Corporation, Inc. ("PICA"), Coalition of Investigation and Security Companies of Ohio, a.k.a. CISCO ("CISCO"), Buckeye State Association of Private Investigators, Inc., a.k.a. BSA ("BSA"), and Vincent Volpi ("Volpi"), appeal the summary judgment granted in favor of defendant-appellee, Roger W. Tracy, Tax Commissioner of Ohio.

Appellants initiated this action for injunctive and declaratory relief. In their complaint, appellants sought to enjoin appellee from collecting the new sales tax authorized under R.C. Chapter 5739. Additionally, they sought to have R.C. 5739.01(EE) declared unconstitutional, as violative of their equal protection rights under Section 2, Article I of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution. The parties filed cross-motions for summary judgment. The Franklin County Court of Common Pleas denied appellants' motion and granted appellee's. Appellants now appeal and raise the following assignment of error:

"The trial court improperly granted summary judgment in favor of appellee and incorrectly denied appellants' motion for summary judgment."

Effective August 1, 1991, the Ohio General Assembly amended R.C. 5739.01 to include "[p]rivate investigation and security service" within its definition of "sale" and "selling." R.C. 5739.01(B)(3)(h). As a result, these services became subject to the Ohio Sales and Use Tax beginning August 1, 1991. Expressly excluded from the definition of "[p]rivate investigation and security service" in R.C. 5739.01(EE) and exempted from the sales and use tax are "special duty services provided by off-duty police officers, deputy sheriffs, and other peace officers regularly employed by the state or a political subdivision." This exemption provides the basis for appellants' equal protection argument.

Specifically, appellants claim that R.C. 5739.01(EE) unlawfully discriminates against them by creating an artificial class of persons ("special duty peace officers"), which may perform private investigation and security services without being subjected to the sales and use tax under R.C. 5739.01(B)(3)(h). Appellants further claim that there is no rational basis for the classification because

appellants and the exempted class are "in all relevant respects alike." Both classes allegedly provide the same private investigation and security services, and their consumers, therefore, consume the same services. Appellants claim they are unequally burdened because their services are subjected to the tax while those same services provided by special duty peace officers are not.

Actual discrimination allegedly arises from both (1) the legal obligation to pay the tax and (2) the loss of business resulting from the competitive disadvantage. As providers, appellants are required to pay the sales tax even if it is not collected from their consumers. In addition, appellants arguably face actual discrimination because consumers will likely opt for the services provided by the exempted class in order to avoid the additional cost imposed by the sales tax. Imposition of the sales tax will increase the price of appellants' services; therefore, consumers will likely prefer the lower priced services provided by special duty peace officers.

Appellants argue that the trial court failed to address its arguments regarding the impact on consumers and that a proper equal protection analysis must focus on both the provider and the consumer. Appellee countered that it is the transaction that is taxed and that the transaction should be the focus of an equal protection analysis. This review necessarily involves consideration of the providers. In any event, appellants allege that summary judgment was not proper because reasonable minds could not conclude only in favor of the movant, appellee.

Pursuant to Civ.R. 56(C), summary judgment may be granted only where it is determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273; *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 327, 587 N.E.2d 825, 827.

For reasons set forth more fully below, this court concludes, after having construed the evidence most strongly in favor of appellants, that the Equal Protection Clause was not violated and summary judgment was appropriate.

■ Our analysis of the alleged violations of the Equal Protection Clauses of both the Ohio and United States Constitutions will be treated together because both clauses impose essentially identical limits on governmental classification. See *Kinney v. Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 207, 322 N.E.2d 880, 882. The appropriate standard of

review, here, is whether the difference in treatment rationally furthers a legitimate state interest. *Nordlinger v. Hahn* (1992), 505 U.S. ——, ——, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 12; *Chicago Pacific Corp. v. Limbach* (1992), 65 Ohio St.3d 432, 436–438, 605 N.E.2d 8, 11–13. A heightened review is not necessitated because the classification (tax exemption) does not "jeopardiz[e] the exercise of a fundamental right or categorize[ ] on the basis of an inherently suspect characteristic." *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 199, 625 N.E.2d 597, 600, citing *Cleburne v. Cleburne Living Ctr., Inc.* (1976), 473 U.S. 432, 439–441, 105 S.Ct. 3249, 3253–3255, 87 L.Ed.2d 313.

▮ Although the Equal Protection Clause does not demand, for purposes of rational-basis review, that the Ohio General Assembly or governing decisionmaker actually articulate the purpose or rationale supporting its classification, this court's review of the classification does require that a purpose "may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker." *Nordlinger*, 505 U.S. at ——, 112 S.Ct. at 2334, 120 L.Ed.2d at 15. In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. *Id.* at ——, 112 S.Ct. at 2332, 120 L.Ed.2d at 13. This standard of review is especially deferential in the context of classifications made by complex tax laws. *Id.*

The Equal Protection Clause, therefore, does not forbid classifications. *Chicago Pacific Corp., supra,* 65 Ohio St.3d at 436, 605 N.E.2d at 11; *MCI Telecommunications Corp., supra,* 68 Ohio St.3d at 199, 625 N.E.2d at 600. The classification, however, must not be "capricious or arbitrary" and must " 'res[t] upon some reasonable consideration of difference or policy.' " *Allegheny Pittsburgh Coal Co. v. Cty. Comm. of Webster Cty., West Virginia* (1989), 488 U.S. 336, 344, 109 S.Ct. 633, 638, 102 L.Ed.2d 688. A review of the evidence, viewed most favorably towards appellants, reveals that the classification rationally furthers conceivable and reasonable state policies and interests. There are many differences between appellants and the exempted special duty peace officers which justify differing treatment.

It is the differences between the two classes of providers and the resulting impact on their respective services which form the basis of our review. The exemption under R.C. 5739.01(EE) is based upon the status of the provider, not the subject matter of the sale or the status of the consumer. Our review, therefore, focuses on whether the status of the provider (special duty peace officer) qualifies the sale of its private investigation service, or security guard

service, for an exemption. If the status of the provider, as a special duty peace officer, does, in fact, qualify those services for an exemption, then the classification is reasonable and does not deprive appellants of equal protection of the laws. *Red Fox Stables v. Porterfield* (1972), 28 Ohio St.2d 239, 57 O.O.2d 472, 277 N.E.2d 433.

In *Red Fox Stables,* the Ohio Supreme Court held that the assumption that tax assessments and exemptions are based solely on the nature of the commodity sold was without merit. In so holding, the court noted that "[t]he very nature of tax assessments and exemptions requires that certain items and persons be classified." *Id.* at 240, 57 O.O.2d at 472, 277 N.E.2d at 434. The Equal Protection Clause prevents "governmental decisionmakers from treating differently persons who are in all relevant respects alike." *State ex rel. Williams v. Glander* (1947), 148 Ohio St. 188, 199, 35 O.O. 192, 197, 74 N.E.2d 82, 87. *Chicago Pacific Corp., supra,* 65 Ohio St.3d at 436, 605 N.E.2d at 11; *MCI Telecommunications Corp., supra,* 68 Ohio St.3d at 199, 625 N.E.2d at 600, citing *F.S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990–991.

Appellants claim that, because they provide the same services as that provided by the exempted special duty peace officers, they are "in all relevant respects alike." Nature of the service or commodity sold, however, is not the determining factor. *Red Fox Stables.* The "same services" argument was also raised and rejected in *MCI Telecommunications Corp. v. Tracy* (1992), 84 Ohio App.3d 465, 616 N.E.2d 1212. As long as there is a reasonable distinction, or difference in state policy, a statute may discriminate in favor of a certain class without being deemed arbitrary or violative of equal protection rights. *Lyons v. Limbach* (1988), 40 Ohio St.3d 92, 94, 532 N.E.2d 106, 108, citing *Madden v. Kentucky* (1940), 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590. See, also, *Allegheny Pittsburgh Coal Co.,* 488 U.S. at 344, 109 S.Ct. at 638, 102 L.Ed.2d at 697. The classification, however, must reflect preexisting differences and "cannot create new ones that are supported by only their own bootstraps." *Williams v. Vermont* (1985), 472 U.S. 14, 27, 105 S.Ct. 2465, 2474, 86 L.Ed.2d 11, 22.

The evidence and relevant statutory provisions shed light on numerous differences between the classes, most significantly, the mandatory level of training required of peace officers, their ability to carry firearms and arrest for misdemeanor offenses, and their visibility as uniformed law officers. These distinctions rationally further a reasonable and conceivable state interest in deterring crime by having more peace officers on the streets. The sales tax exemption under R.C. 5739.01(EE) encourages this result and, therefore, furthers a rational state policy.

Unlike the class in *MCI Telecommunications Corp. v. Limbach,* appellants and the exempted special duty peace officers are not alike "in all relevant respects." Special duty peace officers are better equipped to deter crime. Pursuant to R.C. 2935.03(A), peace officers not only have the power to make arrests, they have a duty to arrest and detain any "person found violating * * * a law of this state." This duty exists even when the peace officer is employed as a private security guard on special duty. *State v. Glover* (1976), 52 Ohio App.2d 35, 38, 6 O.O.3d 20, 22, 367 N.E.2d 1202, 1204. The Ohio Supreme Court adopted this holding in *Warrensville Hts. v. Jennings* (1991), 58 Ohio St.3d 206, 211, 569 N.E.2d 489, 494, where it agreed that police officers have a continuing duty to obey and enforce the law. Appellants, as nonpolice, private investigators and security guards, are not law enforcement officers. See R.C. 4749.08. Appellants, therefore, do not have power to make warrantless arrests for misdemeanors. Pursuant to R.C. 2935.04, appellants have the power to make warrantless arrests only for felonies, and this power is no different than that shared by every citizen.

In addition, special duty peace officers have the authority to carry firearms, whereas not all private investigators or security guards do. Every peace officer is required annually, pursuant to R.C. 109.801(A)(1), to "successfully complete a firearms requalification program approved by the executive director of the Ohio peace officer training council." This mandatory training enables each peace officer to carry weapons. Firearms training, however, is optional for appellants and required only for those private investigators or security guards who elect to carry a firearm. See R.C. 4749.10. Furthermore, the parties have stipulated that none of the seventy-two persons registered as private investigative or security guard employees of appellant Volpi, for the period July 1, 1991 through June 30, 1992, are certified to bear firearms.

Persons serving as private investigators or security guards are subject to different regulations and different training requirements than those of special duty peace officers. This is yet another basis justifying different tax treatment.

Peace officers are required to undergo extensive training. R.C. 109.77(A) mandates that every peace officer obtain "a certificate by the executive director of the Ohio peace officer training council attesting to his satisfactory completion of an approved state, county, municipal, or department of natural resources peace officer basic training program." Leonard M. Bram, director of the Private Security Training Division of the Ohio Peace Officer Training Council, and Lt. Lloyd Bratz, whose duties involve operation and supervision of the Cleveland Police Department Training Academy, testified in their affidavits that the Ohio Peace Officer Training Council requires four hundred twenty hours of training in order to become a certified or commissioned law enforcement officer. This is in accordance with R.C. 109.77 and Ohio Adm.Code 109:2–1–12(A)(2).

Bram also testified that persons serving as private security guards or investigators are not required to obtain peace officer basic training and certification. Private investigators and security guards are not law enforcement officers, under R.C. 4749.08, and are not included within the definition of "peace officer" under R.C. 109.71. Appellants, therefore, are not required to obtain peace officer training and certification. Bram also testified that the only training required for persons serving as private investigators or security guards is in the area of firearms training, if applicable. This is evident from a review of the governing chapter, R.C. Chapter 4749. Furthermore, as discussed earlier, firearms training is mandated only if the private investigator or security guard elects to carry a weapon.

Appellants, therefore, are subject to requirements which are less rigorous than that required of special duty peace officers. R.C. 4749.03(A)(1)(b) and Ohio Adm.Code 1301:4–5–08 describe the education, training and experience requirements for licensure as a private investigator or security guard provider. Under Ohio Adm.Code 1301:4–5–08(C), "specialized education in criminal justice or law enforcement" is only an optional alternative to work experience. Furthermore, the licensing scheme, under R.C. Chapter 4749, only requires the head of the business to be licensed. The licensee's employees need only register with the Department of Commerce. R.C. 4749.06 and 4749.13, and Ohio Adm.Code 1301:4–5–11. As the superintendent of the division charged with administering and enforcing R.C. Chapter 4749, Rae Ann Estep testified in her affidavit that there are no education, training or experience prerequisites to registration under R.C. 4749.06. Appellants' employees, therefore, need not possess any training or work experience in order to be registered as an employee capable of performing private investigation or security guard services.

Appellant Volpi testified, via affidavit, that the necessary training, level of responsibility and degree of care required of both groups in performing private investigation and security guard services are identical. This does not rebut established law and evidence that both groups have different experience, capabilities and responsibilities. Peace officers have a duty to arrest and detain any person found violating the law. This responsibility is carried with them even while on special duty. In addition, the authority to carry a firearm and make misdemeanor arrests necessarily enhances the type of service provided by special duty peace officers.

Finally, appellants and special duty peace officers are subject to different statutory requirements. R.C. Chapter 4749, the statute governing private investigation and security services, specifically excludes special duty peace officers from its regulations, and specifically requires that uniforms and identification cards be clearly distinguishable from that of law enforcement officers.

With regard to uniforms, R.C. 4749.08(B) and Ohio Adm.Code 1301:4–5–16 require private investigators and security guards to wear uniforms which are "readily distinguishable from the uniforms worn by law enforcement officers." This is to avoid confusion of private investigators and security guards with peace officers. As stipulated by the parties, special duty peace officers frequently wear their official uniforms while on special duty. This enhances their visibility and operates as a further deterrent to crime.

Differing treatment is also evidenced from the express exclusion under R.C. 4749.01(H), which states:

" 'Private investigator,' 'business of private investigation,' 'security guard provider,' and 'business of security services' do not include:

"(1) Public officers and employees whose official duties require them to engage in investigatory activities[.]"

Estep, superintendent of the Division of Consumer Finance, which is the division charged with the responsibility of administering and enforcing R.C. Chapter 4749, explained this provision in her affidavit. Specifically, she testified that R.C. 4749.01(H)(1) exempts "from the licensure and registration requirements any police officers, deputy sheriffs, and other peace officers who perform 'special duty' at the direction or with the consent of the law enforcement agency which employs them." Special duty employment, as defined in Division Directive 3.17 (which is properly incorporated in the affidavit of Thomas M. Fischer, Police Sergeant for the Columbus Division of Police), "evolves directly from the authority granted to an individual by virtue of being a sworn law enforcement officer with the Division of Police." Accordingly, peace officers performing special duty services are excluded from the licensing requirements of R.C. Chapter 4749.

The class of special duty peace officers, therefore, is not regulated in the same manner as appellants. For this reason, also, *MCI Telecommunications Corp. v. Limbach*, does not require a finding that appellants and special duty peace officers are alike "in all relevant respects." In *MCI Telecommunications Corp.*, both classes were treated the same by their governing entity, the Public Utilities Commission, and both were consequently regulated in the same manner. *Id.*, 68 Ohio St.3d at 200, 625 N.E.2d at 600. Here, the class of special duty peace officers are expressly excluded from the licensing requirements of R.C. Chapter 4749. Accordingly, the tax exemption under R.C. 5739.01(EE) is based upon reasonable distinctions which, as noted above, further a legitimate state interest.

Appellant Volpi's testimony, to the contrary, does not rebut the long-established case law regarding continuing public duty, or the differing statutory requirements which necessarily affect the quality of the services provided. In his affidavit, appellant Volpi testified that the investigative and security services

provided by special duty state and local police are identical to those provided by nonpolice investigators. This ignores, however, the public role peace officers hold on a continuing basis. *Glover,* 52 Ohio App.2d at 38, 6 O.O.3d at 22, 367 N.E.2d at 1204; *State v. Butler* (1991), 77 Ohio App.3d 143, 146, 601 N.E.2d 510, 512; *State v. Clark* (1983), 10 Ohio App.3d 308, 309, 10 OBR 513, 513, 462 N.E.2d 436, 438. Appellants and their employees do not have the same training and, consequently, do not have the same power, *i.e.,* to arrest and/or carry weapons, as that of special duty peace officers.

Viewing the evidence most strongly in favor of appellants, reasonable minds could only conclude that appellants and special duty peace officers are not "in all relevant respects alike." Summary judgment was proper because there is no material issue of fact and, as a matter of law, the classification created in R.C. 5739.01(EE) furthers a legitimate state interest in deterring crime by having more police on the streets as private investigators and security guards.

Appellants' assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and MCCORMAC, JJ., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.