RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0356a.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

CHARLOTTE CUNO, et al.,

        *Plaintiffs-Appellants,*

    *v.*

DAIMLERCHRYSLER, INC., et al.,

        *Defendants-Appellees.*

No. 01-3960

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 00-7247—David A. Katz, District Judge.

Argued: February 4, 2003

Decided and Filed: October 19, 2004

Before: SILER, DAUGHTREY, and COLE, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Peter D. Enrich, NORTHEASTERN UNIVERSITY SCHOOL OF LAW, Boston, Massachusetts, for Appellants. Charles A. Rothfeld, MAYER, BROWN, ROWE & MAW, Washington, D.C., Sharon A. Jennings, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellees. **ON BRIEF:** Peter D. Enrich, NORTHEASTERN UNIVERSITY SCHOOL OF LAW, Boston, Massachusetts, Terry J. Lodge, Toledo, Ohio, for Appellants. Charles A. Rothfeld, MAYER, BROWN, ROWE & MAW, Washington, D.C., Sharon A. Jennings, Robert C. Maier, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, Albin Bauer, John T. Landwehr, EASTMAN & SMITH, Toledo, Ohio, Truman A. Greenwood, Theodore M. Rowen, SPENGLER NATHANSON, Toledo, Ohio, Samuel J. Nugent, Barbara E. Herring, OFFICE OF THE CITY OF TOLEDO LAW DEPARTMENT, Toledo, Ohio, for Appellees.

---

**AMENDED OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. The plaintiffs initiated this litigation in state court, challenging the validity of certain state tax credits and local property tax abatements that were granted to DaimlerChrysler Corporation as an inducement to the company to expand its business operations in Toledo, Ohio. They contend that the tax scheme discriminates against interstate commerce by granting preferential treatment to in-state investment and activity, in violation of the Commerce Clause of the United States Constitution and the Equal Protection Clause of the Ohio Constitution. After the defendants removed the action to federal court, the district court entered an order dismissing the complaint under Federal Rules

1

of Civil Procedure 12(b)(1) and 12(b)(6) for failure to state a claim. Because we conclude that the investment tax credit runs afoul of the Commerce Clause, we can affirm only part of the district court's judgment.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In 1998, DaimlerChrysler entered into an agreement with the City of Toledo to construct a new vehicle-assembly plant near the company's existing facility in exchange for various tax incentives. DaimlerChrysler estimated that it would invest approximately $1.2 billion in this project, which would provide the region with several thousand new jobs. In return, the City and two local school districts agreed to give DaimlerChrysler a ten-year 100 percent property tax exemption, as well as an investment tax credit of 13.5 percent against the state corporate franchise tax for certain qualifying investments. The total value of the tax incentives was estimated to be $280 million.

Ohio's investment tax credit grants a taxpayer a non-refundable credit against the state's corporate franchise tax if the taxpayer "purchases new manufacturing machinery and equipment during the qualifying period, provided that the new manufacturing machinery and equipment are installed in [Ohio]." Ohio Rev. Code Ann. § 5733.33(B)(1). The investment tax credit is generally 7.5 percent "of the excess of the cost of the new manufacturing machinery and equipment purchased during the calendar year for use in a county over the county average new manufacturing machinery and equipment investment for that county." *See* Ohio Rev. Code Ann. § 5733.33(C)(1). The rate increases to 13.5 percent of the cost of the new investment if it is purchased for use in specific economically depressed areas. *See* Ohio Rev. Code Ann. § 5733.33(C)(2), (A)(8)-(13). The credit may not exceed $1 million unless the taxpayer has increased its overall ownership of manufacturing equipment in the state during the year for which the credit is claimed. *See* Ohio Rev. Code Ann. § 5733.33(B)(2)(a). To the extent that the credit exceeds the corporation's total Ohio franchise tax liability in a particular year, the balance of the credit is carried forward and can be used to reduce its liability in any of the three following years. *See* Ohio Rev. Code Ann. § 5733.33(D).

The personal property tax exemption is authorized under §§ 5709.62 and 5709.631; it permits municipalities to offer specified incentives to an enterprise that "agrees to establish, expand, renovate, or occupy a facility and hire new employees, or preserve employment opportunities for existing employees" in economically depressed areas. Ohio Rev. Code Ann. § 5709.62(C)(1). An exemption may be granted "for a specified number of years, not to exceed ten, of a specified portion, up to seventy-five per cent, of the assessed value of tangible personal property first used in business at the project site as a result of the agreement." Ohio Rev. Code Ann. § 5709.62(C)(1)(a). The exemption may exceed 75 percent with consent of the affected school districts. *See* Ohio Rev. Code Ann. § 5709.62(D)(1).

The district court held that the investment tax credit and the property tax exemption do not violate the Commerce Clause because, although "an increase in activity in Ohio could increase the credit and exemption amount" under the two statutes, an increase in activity *outside* the state would not *decrease* the amount of the tax credit or exemption and therefore would not run afoul of the United States Supreme Court's ruling in *Westinghouse Electric Company v. Tully,* 466 U.S. 388, 400-01 (1984). From that decision, the plaintiffs now appeal.

## II. *ANALYSIS*

We review *de novo* a district court's order granting a motion to dismiss for failure to state a claim upon which relief may be granted. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In considering a motion to dismiss pursuant to Rule 12(b)(6), all well-pleaded factual allegations of the complaint must be accepted as true and the complaint construed in the light most favorable to the plaintiffs. *Id.* It is well-settled that dismissal of a complaint is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)(citing *Conley v Gibson*, 355 U.S. 41, 45-46 (1957)).

On appeal, the plaintiffs' primary contention is that the Ohio statutes authorizing the investment tax credit and personal property tax exemption violate the Commerce Clause of the United States Constitution. Secondarily, the plaintiffs claim that the tax incentives violate Ohio's Equal Protection Clause.

## A. Commerce Clause Claim

The United States Constitution expressly authorizes Congress to "regulate Commerce with foreign Nations, and among the several States," U.S. Const. art. I, § 8, cl. 3, and the "negative" or "dormant" aspect of the Commerce Clause implicitly limits the State's right to tax interstate commerce. A tax provision satisfies the requirements of the Commerce Clause if (1) the activity taxed has a substantial nexus with the taxing State; (2) the tax is fairly apportioned to reflect the degree of activity that occurs within the State; (3) the tax does not discriminate against interstate commerce; and (4) the tax is fairly related to benefits provided by the state. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).

The parties do not dispute that the tax provisions at issue have a sufficient nexus with the state, are fairly apportioned, and are related to benefits provided by the state. Nor do the parties dispute that it is legitimate for Ohio to structure its tax system to encourage new intrastate economic activity. Indeed, the United States Supreme Court has indicated that the Commerce Clause "does not prevent the States from structuring their tax systems to encourage the growth and development of intrastate commerce and industry," nor does it prevent a state from "compet[ing] with other States for a share of interstate commerce" so long as "no State [] discriminatorily tax[es] the products manufactured or the business operations performed in any other State." *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 336-37 (1977); *see also Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 272 (1984) (the federal Commerce Clause "limits the manner in which States may legitimately compete for interstate trade"). Rather, the parties dispute whether Ohio's method for encouraging new economic investment – conferring investment tax incentives and property tax exemptions – discriminates against interstate commerce.

The United States Supreme Court has never precisely delineated the scope of the doctrine that bars discriminatory taxes. The Court has made clear, however, that a tax statute's "constitutionality does not depend upon whether one focuses upon the benefitted or the burdened party." *Bacchus Imports*, 468 U.S. at 273. The fact that a statute "discriminates against business carried on outside the State by disallowing a tax credit rather than by imposing a higher tax" is therefore legally irrelevant. *Westinghouse Elec. Corp. v. Tully*, 466 U.S. 388, 404 (1984).

In general, a challenged credit or exemption will fail Commerce Clause scrutiny if it discriminates on its face or if, on the basis of "a sensitive, case-by-case analysis of purposes and effects," the provision "will in its practical operation work discrimination against interstate commerce," *West Lynn Creamery v. Healy*, 512 U.S. 186, 201 (1994) (citations omitted), by "providing a direct commercial advantage to local business." *Bacchus Imports*, 468 U.S. at 268 (citations omitted). "'[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Dep't. of Envtl. Quality,* 511 U.S. 93, 99 (1994). A state tax provision that discriminates against interstate commerce is invalid unless "it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 101 (quoting *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 278 (1988)).

## 1. Investment Tax Credit

Although the investment tax credit at issue here is equally available to in-state and out-of-state businesses, the plaintiffs nevertheless maintain that it discriminates against interstate economic activity by coercing businesses already subject to the Ohio franchise tax to expand locally rather than out-of-state. Specifically, any corporation currently doing business in Ohio, and therefore paying the state's corporate franchise tax in Ohio, can reduce its existing tax liability by locating significant new machinery and equipment within the state, but it will receive no such reduction in tax liability if it locates a comparable

plant and equipment elsewhere. Moreover, as between two businesses, otherwise similarly situated and each subject to Ohio taxation, the business that chooses to expand its local presence will enjoy a reduced tax burden, based directly on its new in-state investment, while a competitor that invests out-of-state will face a comparatively higher tax burden because it will be ineligible for any credit against its Ohio tax.

The plaintiffs' argument principally relies on the Supreme Court's own explanation of its Commerce Clause jurisprudence in cases invalidating tax schemes that encourage the development of local industry by imposing greater burdens on economic activity taking place outside the state. In *Boston Stock Exchange*, for example, the Supreme Court held unconstitutional amendments to New York's securities transfer tax that aimed to offset the competitive advantage that the transfer tax otherwise created for out-of-state exchanges that did not tax transfers. *See Boston Stock Exchange*, 429 U.S. at 323 - 24. Prior to the amendment, New York uniformly taxed in-state transfers of securities without regard to the place of sale. *See id.* at 322. The amendment created a 50 percent reduction in the tax rate on transfers by nonresidents and limited liability on transfers of large blocks of shares as long as the sales were made in New York. *See id.* at 324. As a result, the amendment caused transactions involving out-of-state sales to be taxed more heavily than transactions involving in-state sales. *See id.* at 330 - 31. The Court held that the reduction offended the Commerce Clause's anti-discrimination principle by converting a tax that was previously "neutral as to in-state and out-of-state sales" into one that which would induce a seller to trade through a New York broker in order to reduce its tax liability. *See id.* at 330-32. In doing so, New York effectively "foreclose[d] tax-neutral decisions" and "creat[ed] both an advantage for the exchanges in New York and a discriminatory burden on commerce to its sister States." *Id.* at 331. The diversion of interstate commerce from the most economically efficient channels that resulted from New York's use of "its power to tax an in-state operation as a means of 'requiring [other] business operations to be performed in the home state,'" *id.* at 336 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 145 (1970)), was seen by the Court as "wholly inconsistent with the free trade purpose of the Commerce Clause."

Shortly thereafter, in *Maryland v. Louisiana*, 451 U.S. 725 (1981), the Supreme Court reviewed a Louisiana statute that imposed a first-use tax on natural gas extracted from the continental shelf in an amount equivalent to the severance tax imposed on natural gas extracted in Louisiana. *See id.* at 731. Taxpayers subject to the first-use tax were entitled to a direct tax credit on any Louisiana Severance Tax owed in connection with the extraction of natural resources within the state. *See id.* at 732. Most Louisiana consumers of offshore gas were eligible for tax credits and exemptions, but the tax applied in full to offshore gas moving through and out of state. *See id.* at 733. Noting that the state severance tax credit "favor[ed] those who both own [offshore] gas and engage in Louisiana production" and that the "obvious economic effect of this Severance Tax Credit [was] to encourage natural gas owners involved in the production of [offshore] gas to invest in mineral exploration and development within Louisiana rather than to invest in further [offshore] development or in production in other States," the Court held that the statute "unquestionably discriminate[d] against interstate commerce in favor of local interests." *Id.* at 756 - 57.

In *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388 (1984), the Supreme Court invalidated a New York franchise tax that gave corporations an income tax credit based on the portion of their exports shipped from New York. Under the law, income from a subsidiary engaged exclusively in exports was to be combined with the income of its parent company for state tax purposes. *See id.* at 393. In an effort to provide an incentive to increase export activity in New York, the parent company was given a partially offsetting credit against income tax attributable to the subsidiary's income generated from New York exports. *See id.* Because the credit was based on the ratio of the subsidiary's New York exports to its income from all export shipments, a company's overall New York tax liability would decrease as exports from New York increased relative to exports from other states. Conversely, a company's New York tax liability increased when exports from New York decreased relative to exports from other states. *See id.* at 401. The Court found that the tax scheme "penalize[d] increases in the [export] shipping activities in other states," *id.* at 401, and that it was therefore a discriminatory tax that advantaged New York firms "by placing 'a discriminatory burden on commerce to its sister *States.*'" *Id.* at 406 (quoting *Boston Stock Exchange*, 429 U.S. at 331).

Analogizing to the provisions considered in *Boston Stock Exchange*, *Maryland v. Louisiana*, and *Westinghouse*, the plaintiffs argue that the investment tax credit at issue here encourages the development of local business through the use of Ohio's "power to tax an in-state operation as a means of 'requiring [other] business operations to be performed in the home State.'" *Boston Stock Exch.*, 429 U.S. at 336 (quoting *Bruce Church*, 397 U.S. at 145). Thus, they contend that like the tax credit in *Maryland v. Louisiana*, the economic effect of the Ohio investment tax credit is to encourage further investment in-state at the expense of development in other states and that the result is to hinder free trade among the states. *Cf. Boston Stock Exch.*, 468 U.S. at 336.

The defendants maintain that the Supreme Court's opinions should be read narrowly to hold that tax incentives, like the Ohio tax credit, are permissible as long as they do not penalize out-of-state economic activity, citing Philip M. Tatarowicz & Rebecca F. Mims-Velarde, *An Analytical Approach to State Tax Discrimination Under the Commerce Clause*, 39 Vand. L. Rev. 879, 929 (1986) (elaborating upon and applying this distinction to the Court's precedents). In their view, the Commerce Clause is primarily concerned with preventing economic protectionism – that is, regulatory measures designed to benefit local interests by burdening out-of-state commerce. According to their theory, the only tax credits and exemptions that would run afoul of the Commerce Clause fall into two categories: those that function like a tariff by placing a higher tax upon out-of-state business or products and those that penalize out-of-state economic activity by relying on both the taxpayer's in-state and out-of-state activities to determine the taxpayer's effective tax rate.

Although it is arguably possible to fit certain of the Supreme Court's cases into this framework, it is clear that the Court itself has not adopted this approach in analyzing dormant Commerce Clause cases, undoubtedly because it rests on the distinction between laws that benefit in-state activity and laws that burden out-of-state activity. Such a distinction is tenuous in light of the Court's acknowledgment that "[v]irtually every discriminatory statute allocates benefits or burdens unequally; each can be viewed as conferring a benefit on one party and a detriment on the other, in either an absolute or relative sense." *Bacchus Imports,* 468 U.S. at 273. Indeed, economically speaking, the effect of a tax benefit or burden is the same. Moreover, the Court's command to examine the practical effect of challenged tax schemes suggests that "constitutionality [should] not depend upon whether one focuses upon the benefitted or the burdened party." *Id.; see also Westinghouse,* 466 U.S. at 404 ("Nor is it relevant that New York discriminates against business carried on outside the State by disallowing a tax credit rather than by imposing a higher tax.").

Although the defendants liken the investment tax credit to a direct subsidy, which would no doubt have the same economic effect, the Court has intimated that attempts to create location incentives through the state's power to tax are to be treated differently from direct subsidies despite their similarity in terms of end-result economic impact. The majority in *New Energy* noted in dicta that subsidies do not "ordinarily run afoul of [the Commerce Clause]" because they are not generally "connect[ed] with the State's regulation of interstate commerce." *New Energy Co.*, 486 U.S. at 278; *see also West Lynn Creamery,* 512 U.S. at 199 n.15 ("We have never squarely confronted the constitutionality of subsidies, and we need not do so now. We have, however, noted that '[d]irect subsidization of domestic industry does not ordinarily run afoul' of the negative Commerce Clause." (quoting *New Energy Co.*, 486 U.S. at 278)). Thus, the distinction between a subsidy and a tax credit, in the constitutional sense, results from the fact that the tax credit involves state regulation of interstate commerce through its power to tax.[1]

---

[1]For further discussion of the constitutionality of coercive and non-coercive state regulation of interstate commerce through the state power to tax, see Walter Hellerstein and Dan T. Coenen, *Commerce Clause Restraints on State Business Development Incentives*, 81 Cornell L. Rev. 789, 806-09 (1996) (explaining the non-coercive nature of a similar tax exemption.)

In short, while we may be sympathetic to efforts by the City of Toledo to attract industry into its economically depressed areas, we conclude that Ohio's investment tax credit cannot be upheld under the Commerce Clause of the United States Constitution.

## 2. Personal Property Tax Exemption

The plaintiffs maintain that the discriminatory characteristic of the City's personal property tax exemption rests not on the fact that only in-state property is eligible for exemption, but rather on the conditions that Ohio places on eligibility – conditions that require beneficiaries of the exemptions to agree to maintain a specified level of employment and investment in the state. The effect, they argue, is to subject two similarly situated owners of Ohio personal property to differential tax rates. A taxpayer who agrees to focus his employment or investment in Ohio receives preferential treatment in the form of a tax break, while a taxpayer who prefers to preserve the freedom to hire or invest elsewhere does not.

Although conditions imposed on property tax exemptions may independently violate the Commerce Clause, conditional exemptions raise no constitutional issues when the conditions for obtaining the favorable tax treatment are related to the use or location of the property itself. Stated differently, an exemption may be discriminatory if it requires the beneficiary to engage in another form of business in order to receive the benefit or is limited to businesses with a specified economic presence. *Cf. Maryland*, 451 U.S. at 756-57 (finding unconstitutional a tax benefit that encouraged natural gas owners to invest in other forms of mineral exploration and development within Louisiana rather than investing further in natural gas development outside the state). However, if the conditions imposed on the exemption do not discriminate based on an independent form of commerce, they are permissible.

Contrary to the plaintiffs' assertions, the conditions imposed on the receipt of the Ohio property tax exemption are minor collateral requirements and are directly linked to the use of the exempted personal property. The authorizing statute requires only an investment in new or existing property within an enterprise zone and maintenance of employees. *See* Ohio Rev. Code Ann. § 5709.62(C)(1). The statute does not impose specific monetary requirements, require the creation of new jobs, or encourage a beneficiary to engage in an additional form of commerce independent of the newly acquired property.[2] As a consequence, the conditions placed on eligibility for the exemption do not independently burden interstate commerce.

The cases on which the plaintiffs rely are inapplicable here, because they fail to address the question of whether conditions attached to the receipt of an exemption violate the anti-discrimination principle where the conditions themselves do not impose independent burdens upon commerce. In *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564 (1997), the Supreme Court reviewed a property tax exemption for charitable organizations that excluded organizations operated principally for the benefits of nonresidents and found the exemption unconstitutionally discriminatory because the effect of the statute was to "distinguish[] between entities that serve a principally interstate clientele and those that primarily serve an intrastate market, singling out [entities] that serve mostly in-staters for beneficial tax treatment, and penalizing those camps that do a principally interstate business." *Id.* at 576. Similarly, the Fifth Circuit in *Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*, 128 F.3d 910 (5th Cir. 1997), invalidated a tax exemption because it required beneficiaries to give a preference to in-state manufacturers, suppliers, and laborers. The Ohio provision at issue contains no restriction on the individuals employed or served. Therefore, the conditional character of the Ohio property tax exemption does not resemble characteristics of property tax exemptions found unconstitutional by previous courts.

---

[2]Plaintiffs' assertion that the exemption, once received, coerces business into continual re-investment in Ohio in order to preserve the tax exemption is not persuasive. The exemption is project-specific and, therefore, a business does not lose its existing exemption by deciding to make its next investment elsewhere.

Finally, the plaintiffs' argument regarding the effect of the exemption overlooks fundamental differences between tax credits and exemptions. Unlike an investment tax credit that reduces pre-existing income tax liability, the personal property exemption does not reduce any existing property tax liability. The exemption merely allows a taxpayer to avoid tax liability for new personal property put into first use in conjunction with a qualified new investment. Thus, a taxpayer's failure to locate new investments within Ohio simply means that the taxpayer is not subject to the state's property tax at all, and any discriminatory treatment between a company that invests in Ohio and one that invests out-of-state cannot be attributed the Ohio tax regime or its failure to reduce current property taxes. *See* Walter Hellerstein and Dan T. Coenen, *Commerce Clause Restraints on State Business Development Incentives*, 81 Cornell L. Rev. 789, 806-09 (1996) (explaining the non-coercive nature of a similar tax exemption.) Additionally, the personal property tax exemption is internally consistent because, if universally applied, the new property would escape tax liability irrespective of location. Every new investment, no matter where undertaken, would be exempt from a tax. Thus, businesses that desire to expand are neither discriminated against nor pressured into investing in Ohio. Accordingly, we hold that the Ohio personal property tax exemption does not violate the dormant Commerce Clause.

## B. State Equal Protection Claim

The plaintiffs also challenged the investment tax credit and property tax exemption under the Equal Protection Clause of the Ohio Constitution, contending that the authorizing statutes "reflect a bias in favor of entrenched local interests that results in a discriminatory allocation of tax burdens and benefits." The district court found no equal protection violation based on a determination that both provisions were rationally related to a legitimate state interest in revitalizing economically troubled areas.

The Equal Protection Clauses of the Ohio and United States Constitutions impose identical limitations on government classification. *See Am. Ass'n of Univ. Professors v. Cent. State Univ.*, 717 N.E.2d 286, 291 (Ohio 1999) (rejecting an argument that the state equal protection clause imposes stricter analysis than the federal equal protection clause). Heightened review is triggered only if the classification "jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic." *MCI Telecommunications Corp. v. Limbach*, 625 N.E.2d 597, 600 (Ohio 1994). Because the tax credit and the exemption provision classify on the basis of locality, a classification that is not inherently suspect, the tax incentives need only satisfy rational basis review.

Under rational basis review, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Cent. State Univ.*, 717 N.E.2d at 290 (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)). A rational relationship exists so long as "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Pica Corp., Inc. v. Tracy*, 646 N.E.2d 206, 209 (Ohio Ct. App. 1994). The state, moreover, has no duty to produce legislative facts to sustain the rationality of a statutory classification. *Cent. State Univ.*, 717 N.E.2d at 290. A statute is presumed constitutional, and the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)(citation omitted)).

The courts have recognized a state's legitimate interest in revitalizing economically troubled areas in order to eliminate problems frequently associated with urban blight. *See, e.g., Desenco, Inc. v. Akron*, 706 N.E.2d 323, 332 (Ohio 1999) (statutes that created economic development districts were rationally related to the state's legitimate interest in facilitating economic development, creating or preserving jobs, and improving the economic welfare of citizens); *Nordlinger v. Hahn*, 505 U.S. 1, 12 (1992) ("[T]he State has a legitimate interest in local neighborhood preservation, continuity, and stability.") (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)). The benefits conferred by the investment tax credit and property tax exemption are rationally related to this interest, given that their objective is to encourage

businesses to relocate or expand existing facilities in central cities or areas that have high unemployment rates, significant low-income populations, or deteriorating buildings.

The plaintiffs argue nonetheless that granting tax incentives to a new domestic business but not nonresident businesses is not a legitimate purpose under Ohio's Equal Protection Clause. However, the cases cited in support of this argument lend little or no weight to the plaintiffs' position. In *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 880 (1985), for example, the Court invalidated an Alabama statute that imposed a higher tax rate on insurance companies that were incorporated or maintained their principal place of business outside of Alabama, on the ground that the difference in treatment failed to advance a legitimate state interest. In so ruling, the Court held "that promotion of domestic business within a State, by discriminating against foreign corporations that wish to compete by doing business there, is not a legitimate state purpose." *Id.* Thus, *Metropolitan Life* holds that a state may not impose a discriminatory tax in order to promote domestic industry solely based on nonresident status. The tax benefits under the Ohio statutes, however, are equally available to domestic and foreign corporations and classify corporations on the basis of new investment in economically depressed areas.

Likewise inapplicable are the cited opinions in *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County*, 488 U.S. 336 (1989), and *Hooper v. Bernalillo County Assessor*, 472 U.S. 612 (1985). In both cases, the Supreme Court struck down a county property tax assessment scheme that could not reasonably support the state's asserted legislative purpose. In *Allegheny*, the county tax assessor valued property based on the last sale price regardless of when it was last sold, providing only a modest increase in assessed value for properties that had not been recently transferred. *See id.* at 343. This practice resulted in gross disparities in the assessed value of comparable properties. The Court acknowledged that a "[s]tate may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable," but it found no rational basis for the county's tax scheme whose asserted purpose was to "assess[ ] properties at true current value." *Id.* at 343-44. Similarly, the Court held in *Hooper* that a tax exemption classifying military veterans based solely on their period of residency within the state could not be rationalized by the state's interest in encouraging veterans to relocate to the state or in repaying veterans for their military service. 472 U.S. at 620-22.

By contrast, the classification in this case is clearly supported by facts that give rise to a legitimate state interest. In the equal protection context, a tax statute withstands constitutional scrutiny as long as the burden it imposes is found to be rationally related to that purpose. The purpose of the Ohio statutes – to encourage industrial development and economic stimulation of the state's economically troubled areas – clearly has a reasonable nexus to the tax provisions. Hence, we conclude that the plaintiffs have failed to demonstrate that the challenged tax incentives violate the Equal Protection Clause of the Ohio Constitution.

## III. *CONCLUSION*

For the reasons set out above, we REVERSE that portion of the district court's judgment upholding as constitutional the investment tax credit provision of Ohio Rev. Code Ann. § 5733.33, and we enjoin its enforcement. We AFFIRM the remaining portions of the district court's judgment.